### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

UNITED STATES OF AMERICA

v.

ANTONIO ARMOUR

CAUSE NO.: 1:21-CR-47-HAB
1:22-CV-438

### OPINION AND ORDER

Antonio Armour ("Armour" or "Defendant") is a convicted armed fentanyl trafficker serving a 211-month sentence of imprisonment followed by 5 years of supervised release. Pending before the Court is Defendant's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 83), and his amended motions (ECF Nos. 86, 91), wherein Defendant asserts that he received ineffective assistance of counsel. The parties have fully briefed the motions, ECF Nos. 85, 86, 91, 95, and 96) and the matter is ripe for consideration. Because the Court finds no constitutional deficiency in counsel's representation, Defendant's motions will be DENIED and no certificate of appealability will issue.

### FACTUAL BACKGROUND

In July 2021, Armour was charged in a seven-count superseding indictment with four counts of distributing a controlled substance (Counts 1-4), one count of possession with intent to distribute controlled substances, including fentanyl and methamphetamine (Count 5), possession of a firearm in furtherance of a drug trafficking crime (Count 6), and possession of a firearm as a convicted felon (Count 7). The superseding indictment also alleged that Armour's prior robbery conviction constituted a serious violent felony.

The details of Armour's offense are captured in the Presentence Investigation Report (ECF No. 73, PSR at ¶¶s 8-31). From February through May 2021, agents utilized a confidential human

source ("CHS") to perform controlled purchases of fentanyl from Armour. On February 9, 2021, Armour sold the CHS 23.68 grams of fentanyl; on March 12, 2021, he sold the CHS 49.1 grams of fentanyl; on April 15, 2021, Armour sold 25 grams of fentanyl; and on May 12, 2021, he sold the CHS 23.8 grams of fentanyl.

On June 15, 2021, agents served a federal search warrant at Armour's residence. As officers secured the residence, they observed Armour running between the front bedroom and the bathroom and then to a rear bedroom. Officers recovered a loaded Springfield 9mm pistol in the bathroom. In the spare bedroom, they recovered a laundry basket with 152.4 grams of fentanyl and a fentanyl analogue, and two plastic bags containing 106.2 grams of actual methamphetamine. A loaded Ruger 9mm pistol was located in the hamper near the laundry basket and officers located and seized $75,000 in cash in that room. In the closet of the spare bedroom, officers found a jean jacket with 9 plastic bags containing fentanyl, fentanyl analogue and some cocaine. In the main bedroom, they found multiple firearms, including: a loaded Taurus 9mm pistol, a loaded Anderson AR-15 style rifle, and a loaded Pioneer Arms Corporation Hell Pup 7.62x39mm AK-style pistol.

On September 21, 2021, Armour pleaded guilty to Counts 5 and 6 of the superseding indictment pursuant to a written plea agreement. (Plea, ECF No. 54). In exchange for his guilty plea, the Government agreed to a binding term of imprisonment of 211 months, consisting of 151 months imprisonment on Count 5 and a consecutive 60 months on Count 6. (*Id.* at ¶ 8(c)). The Government also agreed not to file a sentencing enhancement under 21 U.S.C. § 851 for Armour's serious violent felony conviction. (*Id.* at 8(h)). Without the Government's agreement, Armour would have faced a minimum 240 months' imprisonment on Counts 5 and 6, consisting of 180 months on Count 5 and a consecutive 60 months on Count 6.

The final revised PSR reflects that Armour's guidelines range on Count 5 was 168-210 months, which was higher than the binding term in his plea agreement. The Court ultimately sentenced Armour to the binding term of 211 months. Although his plea contained an appellate waiver (Plea, ¶ 8(d)), Armour filed a notice of appeal which the Seventh Circuit dismissed upon motion of counsel. Armour then filed the present petition.

## DISCUSSION

### a. Legal Standards

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion pursuant to § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence went beyond the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id.*

Armour's options for relief under §2255 are further limited by the agreements he made in his plea agreement. There, Armour waived his appellate rights as well as his right to contest his conviction and "all components of [his] sentence or the manner in which [the] conviction or [the] sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel." (Plea, ¶8(d)). Thus, the sole avenues left open for Armour to raise complaints under §2255 are his current contentions that he was denied effective representation of counsel.

The Sixth Amendment guarantees criminal defendants "the right ... to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*,

3

397 U.S. 759, 771, n.14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 687–688, and (2) that any such deficiency was "prejudicial to the defense," *id*., at 692. A court may address these prongs in either order and need not address both if the defendant makes an insufficient showing on one. *Id.* at 697.

To establish the performance prong of the *Strickland* test, Armour must show that his attorney's performance failed to meet an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. The court's "scrutiny of counsel's performance [is] highly deferential," *id*. at 689, and Armour "must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted) (internal quotation marks omitted). In assessing counsel's performance, the court does "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010).

As for prejudice, there is again a presumption that the defendant has not suffered prejudice. *Perrone v. United States,* 889 F.3d 898, 908 (7th Cir. 2018). To prevail on this prong, generally a defendant must show that "but for counsel's errors, there is a reasonable probability that the result would have been different." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). In the context of a guilty plea, a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). To make this showing, the defendant "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He must "come forward with objective evidence that he would not have pled guilty," such as evidence regarding

4

"the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* In the context of sentencing, a defendant "must show that but for his counsel's unprofessional error, there is a reasonable probability that the results [of the sentencing hearing] would have been different." *Berkey v. United States*, 318 F.3d 768, 773–74 (7th Cir. 2003).

### b. Performance Prong

#### 1. *Ground One: Guilty Plea*

Armour's first argument claiming deficiencies in counsel's performance relates to the guilty plea. He asserts that counsel should not have advised him to plead guilty because Count 5 was not a proper predicate crime for the §924(c) charge. Simply put, this argument is frivolous. Count 5 charged Armour with possession of a controlled substance with the intent to distribute, including 50 grams or more of methamphetamine, 400 grams or more of a fentanyl mixture, and 100 grams or more of fentanyl analogue, all in violation of 21 U.S.C. § 841(a)(1). Count 6 charged Armour with possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. §924(c). "Drug trafficking crime" means "any felony punishable under the Controlled Substances Act (21 U.S.C. §801, *et seq.*), or chapter 705 of title 46." 18 U.S.C. §924(c)(1)(D)(2). Since 21 U.S.C.§841(a)(1) is a felony punishable under the Controlled Substances Act, it is a predicate drug trafficking crime for a §924(c) conviction.

Armour also seemingly argues that because the "distribution" portion of possession with intent to distribute is not a completed offense, it is an inchoate offense that cannot support a § 924(c) conviction. Again, this is incorrect. Inchoate drug crimes such as attempt and conspiracy qualify as drug trafficking crimes because both are felonies under the Controlled Substances Act. Ground one of Armour's §2255 has no merit.

#### 2. *Ground Two: Sentencing Objection*

Next, Armour argues that counsel should have objected to the maintaining a drug premises enhancement under U.S.S.G. §2D1.1(b)(12). He contends that he told counsel that his house was not a "dope house" or a stash house and that the primary use of the house was for taking care of his kids. He states that he never directed anyone to come to his house for drugs. The problem with this argument is that substantial quantities of drugs were located inside the home along with firearms and other evidence of drug trafficking. Further, the fentanyl for the four controlled buys were stored inside the house and the CHS met Armour behind his home to make the purchases. These facts weigh against any contrary argument Armour now makes.

"When an attorney has made a reasonable, informed, professional judgment that an objection lacks merit; despite being bound to act in their client's best interests—which includes making arguments that the attorney believes may be unsuccessful—that attorney has an ethical duty *not* to raise the meritless objection." *See United States v. Evans*, 92 F.3d 540, 544 (7th Cir. 1996) ("Criminal defense lawyers, like other lawyers, do not have an ethical duty to make groundless arguments; indeed, they have an ethical duty not to make such arguments. The refusal to act unethically by making a groundless argument can never be a ground for arguing ineffective assistance of counsel.") Based on the record here, any objection by counsel to the enhancement here would have fallen into the frivolous category.

Perhaps more importantly, however, is that the binding term in the plea agreement makes the enhancement irrelevant. Armour *agreed* to a binding term and regardless of the enhancement's application or non-application, the enhancement did not alter his ultimate sentence. Armour received the benefit of his bargain with the Government and this Court cannot fault counsel for failing to make either a frivolous objection or one that, even if non-frivolous, would not change the binding term of imprisonment. Ground two, then, is also meritless.

### 3. *Ground Three: Failing to hire or consult a laboratory expert*

Armour's next assertion is that counsel failed to hire an independent lab expert and failed to investigate his case. He claims that he possessed 155 grams of cocaine inside one bag but that the Government's laboratory evidence showed 125 grams of fentanyl and 30 grams of cocaine. He argues that he purchased 155 grams of cocaine and he had no idea that the cocaine was mixed with fentanyl. He believes that the Government engaged in some conspiracy to increase the fentanyl amounts to increase his mandatory minimum sentence.

Of course, whether Armour knew that the 155 grams of cocaine were cut with fentanyl is beside the point since a defendant charged with possession with intent to distribute need only know that the substance possessed was a controlled substance. He need not know the particular identity or the quantities of the substance. *See McFadden v. United States*, 576 U.S. 186, 193-94 (2015). Here, the PSR listed lab results for controlled substances that were more than double the threshold amount of actual methamphetamine necessary for a 10-year mandatory minimum. And he possessed a total of 467 grams of mixtures containing fentanyl, and a total of 437 grams of mixtures containing a fentanyl analogue, either of which would support a 10-year mandatory minimum. Thus, even if all 155 grams of the substance he believes he possessed was cocaine, there were plenty of other drugs found in his residence to drive the 10-year mandatory minimum.

The decision on whether to consult an expert, call an expert at trial, or call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics. Armour fails to explain what, if anything, would have been achieved by counsel's hiring of an expert. Further, given that any of the amounts listed above supported the 10-year mandatory minimum sentence, the Court cannot find fault with counsel's decision to accept the laboratory information set out in the PSR.

*4. Ground Four: Failing to challenge a speedy trial violation on appeal*

Finally, Armour asserts that counsel failed to challenge a speedy trial violation on direct appeal. Again, however, he falls short – for three reasons. First, Armour waived his right to challenge all nonjurisdictional defects when he entered into an unconditional guilty plea. *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The Speedy Trial Act specifically requires a defendant to move for dismissal on speedy trial grounds prior to a guilty plea, and, if he does not, he has waived any right to dismissal. 18 U.S.C. 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."). Second, Armour expressly waived his appellate rights in the written plea agreement (Plea, ¶ 8(d)) as well as his "right to a public and speedy trial." (*id*, ¶ 5(a)). Third, although he filed a notice of appeal, he signed a document concurring with counsel's decision to dismiss his appeal. Given the above waivers, the Court cannot see how counsel could be ineffective for failing to raise an alleged speedy trial violation on direct appeal. Ground four lacks merit.

*5. Summary*

In sum, Armour's motion has not raised any performance issue of counsel worthy of merit. If anything, counsel appears to have negotiated a plea agreement that saved Armour significant time in prison. Without the Government's concessions negotiated by Armour's counsel and documented in the plea agreement, Armour's minimum sentence would have been 240 months. Instead, counsel achieved a meaningful 30-month reduction in his sentence. This Court has said before that plea agreements are a give and take; they typically contain promises and concessions by both the Government and the defendant. The Court is hard-pressed to find fault with counsel's

8

performance when meaningful concessions are reached that otherwise would run to the defendant's detriment. Indeed, by securing the Government's assurances that it would not seek an §851 enhancement, and capping his term of imprisonment at 211 months, the plea agreement netted him a better outcome than what he would have gotten in the absence of such an agreement. Because the Court cannot find that counsel's representation was outside the range of competence demanded by attorneys in criminal cases, it need not go on to examine prejudice.

## DENIAL OF CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings in United States District Courts instructs the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004)); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Armour has not made a substantial showing of the denial of a constitutional right. Having thoroughly reviewed the record before the Court, the undersigned concludes that reasonable jurists would not find the disposition of his ineffective assistance claim debatable or wrong. Accordingly, this Court **DENIES** issuance of a certificate of appealability.

## CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 83), and his amended motions (ECF Nos. 86, 91) and DECLINES to issue a certificate of appealability.

SO ORDERED on November 6, 2024.

_s/ Holly A. Brady_
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT